## COVENANTS AGAINST INCUMBRANCES.

Superior Court of Cincinnati.

ANTOINETTE V. SCHICK V. SOPHIA ULLAND.*

Decided 1922.

*Lien of a Street Assessment—Constitutes a Breach of a Covenant against Incumbrance—Nominal Damages only are Recoverable Unless the incumbrance has been Extinguished—Covenantor upon Paying such an Assessment Becomes Subrogated to the Lien of the City.*

1. A covenant against incumbrances is broken at the time of the delivery of a deed containing such covenant, if the property described therein is subject to the lien of a street assessment.

2. The general rule is that the covenantee can not recover more than nominal damages upon the breach of a covenant against incumbrances without removing or extinguishing the incumbrance or proving that the incumbrance substantially interferes with the use and enjoyment of the property.

3. Where property conveyed free from incumbrances is in fact incumbered, by the lien of a street assessment payable in ten annual installments of which only the first installment has been paid, but the covenantee conveyed such land to a purchaser who expressly assumed to pay such assessment as part of the purchase price, such agreement will be considered as a covenant to extinguish the incumbrance and, the covenantee having reduced the purchase price by the amount of such assessment may recover the same as damages against the covenantor.

4. In such a case if the covenantor, having paid the amount of such assessment to his covenantee as damages for breach of his covenant against incumbrances, is required by the city to pay any unpaid installments of such assessment by virtue of his personal liability under the statute, he may be relieved from the consequences of such double liability by an equitable action of subrogation, and upon payment of such assessment, will be subrogated to the city's lien upon the land.

· *W. J. Schick*, for the plaintiff.

*Heintz & Heintz*, for defendant.

---

* No proceedings on either appeal or error were taken in this case.

Marx, J.

By agreement of the parties, this case was tried to the court without the intervention of a jury. The facts are not in dispute.

The defendant conveyed a house and lot to the plaintiff by warranty deed, containing a covenant that the title was clear, free and unincumbered. At the time the deed was delivered, the property was subject to the lien of a street assessment duly levied by the City of Cincinnati and payable in ten (10) annual installments. Thereafter the plaintiff sold the property and the plaintiff's grantee assumed the payment of the street assessments as part of the purchase price. Prior to the conveyance to plaintiff's grantee, the plaintiff demanded payment from the defendant of the amount of said street assessments and the defendant refused to pay the same.

The street assessment in question was payable in ten (10) annual installments of which only the first one has been paid. The remaining installments are not yet due.

The defendant admits that her covenant against incumbrances was broken at the time she conveyed the property in question to the plaintiff by reason of the fact that the property was incumbered by the lien of the street assessments. The defendant further contends that she is liable for the amount of the first installment of the street assessment, which has been paid either by the plaintiff or the plaintiff's grantee, but insists that she is not liable for more than nominal damages by reason of the breach of her covenant as to the remaining nine (9) installments which are unpaid and the lien of which has not been removed or extinguished.

The sole question to be determined in this case is whether the plaintiff can recover more than the value of the first installment of the street assessment in question without removing or extinguishing the lien or incumbrance of the remaining assessments.

This question is not as simple as it may seem from first impression. The present case was first heard upon a demurrer to the petition and this court in an opinion overruling the demurrer, said:

"It is clear that in Ohio, covenants against incumbrances run with the land. *Foote v. Burnet,* 10 Ohio 317; *Van Dyke v. Rule,* 49 O. S., 530.

It is equally clear that an unpaid street assessment is a lien against the land and is an incumbrance. *Creig v. Heiz,* 30 O. S. 550.

The demurrer admits the damage the plaintiff alleges as a result of this incumbrance on property which defendant warranted unincumbered, hence the demurrer must be overruled. *McKnight* v. *Bldg. Ass.,* 23 N.P.(N.S.), 189."

However, it is now urged that notwithstanding the covenant and its breach, the plaintiff can not recover more than nominal damages as to the unpaid nine (9) installments of the street assessment unless or until she pay such intallments or removes or extinguishes their lien. This claim is based upon the familiar rule stated as follows in 15 Corpus Juris, page 1294, Article 175:

"While a grantee with covenants against incumbrances may upon satisfying the incumbrances maintain an action for its breach, he can not recover the amount thereof until he has removed or extinguished the incumbrance."

It is further claimed that the owner of land at the time a street assessment is made, is personally liable for the payment of the assessment under Sections 3897 and 3898 of the General Code. See *Toledo* v. *Barnes,* 8 Circuit Court page 684. This being true the plaintiff urges that she is still personally liable for the nine (9) unpaid installments of this street assesment and can be compelled to pay the same by the city in case the present or future owner fails to do so. If this occurs and if the plaintiff is compelled to pay the defendant in this case the value of such street assessment, she will, of necessity, be required to pay the same assessment twice.

The plaintiff answers this claim by urging that her damages are actual and that the land she bought was damaged in value to the amount of the outstanding street assessments and that she had to deduct this amount from the selling price of the property.

The plaintiff further asserts that she has taken steps to extinguish the street assessment as it becomes due by securing a purchaser who specifically covenants to pay such assessments, and has thereby provided the means of satisfying the lien upon the property.

The general rule applicable to the situation in the case at bar is stated in *Stambaugh* v. *Smith*, 23 O. S., 584, at page 588; in which the court says:

"Regarding the action below, however, as based on the covenant against incumbrances, a breach was sufficiently stated in the petition. The covenant against incumbrances is broken as soon as made, if an incumbrance in fact exists; and a right of action thereon immediately accrues to the covenantee at least for nominal damages. But in such action more than nominal damages can not be recovered, unless the covenantee has removed the incumbrance or it be shown that his possession has been disturbed, or his use or enjoyment of the land, has, in some way, been interfered with by reason of the incumbrance."

And again at page 597, the court says:

"Upon breach of the covenant against incumbrances, there is no presumption of actual damages, for the reason that no such damage necessarily accrues on the breach. Yet it may accrue in various ways. The covenantee may be obliged to remove the incumbrance in order to save his estate; he may be evicted under it, or he may be subjected to loss and inconvenience in the use and enjoyment of the estate."

The reason for the rule which denies more than nominal damages in a case where it is only shown that there is an outstanding incumbrance which has not caused the grantee any actual damages is expressed in *McOucklin* v. *Milbank*, 152 New York Reports 297, at pages 301 and 302. In that case there was an outstanding mortgage which the defendants claim may have been an outstanding incumbrance on the property at the time of their purchase but which they also claim was extinguished in certain foreclosure proceedings. The court said:

"The plaintiff was neither evicted under the Manchester mortgage, nor has he paid the mortgage or any part of it. It is

the general rule that a grantee under a deed containing a covenant against incumbrances, who has not been disturbed in his possession and who has not paid the mortgage or other money lien on the land, is not entitled in any action for the breach of the covenant to recover more than nominal damages. This rule was declared with great distinctness in the case of *Delavergne* v. *Norris* (7 Johns, 358), and has been steadily adhered to in this state. The principle of the decision is that a covenant against incumbrances is treated as a contract of indemnity, and although broken as soon as made, if broken at all, nevertheless a recovery (beyond nominal damages) is confined to the actual loss sustained by the covenantee by reason of the payment or enforcement of the incumbrance against the property.''

The case of *Creig* v. *Heis*, 30 O. S., 550, which clearly holds that an assessment payable in installments is a lien upon the land within the meaning of a covenant against incumbrances, does not cover the exact point now under consideration for the reason that the plaintiff in that case, prior to bringing his action, paid the entire assessment. *See statement of fact, page* 552.

For the same reason, the case of *McNight* v. *Columbian Land & Bldg. Co.*, 23 N. P. (N.S.,), 189, cited on demurrer is not now in point.

No case is found in Ohio which determines the specific question here presented. Authorities outside of Ohio show a strong inclination to adapt the general rule to fit the particular case and thereby work out a practical rule of justice. For example, in *General Underwriting Co. of New York* v. *Stilwell*, 123 New York Supplement, 653, the facts were similar to those in the case at bar, but arose in a foreclosure proceeding. In that case Wood conveyed the land by warranty deed. The court said:

''At the time of the conveyance from the grantor Wood, there were assessments on the land which still remain undischarged. * * *.''

It was claimed that the property should be sold under foreclosure and the referee should pay the assessments out of the proceedings and the grantee should be relegated to an action at law to recover against the Wood parties on the covenant. The court says at page 654:

"It is claimed by the respondent that this is the only result which can be reached in this action; but I think this claim is clearly wrong. This is an action in equity, and the dominant rule in equity is to dispose at one time all the causes of action between the same parties arising from the same subject matter, in order to avoid multiplicity and circuity of actions. It is, of course, true that in an action at law Stilwell could not recover against Wood, for the breach of the covenant, more than nominal damages, unless the assessments were actually paid by him. *Delavergne* v. *Norris,* 7 Johns, 358, 5 Am. Dec., 281; *McGuckin* 'v. *Milbank,* 152 N. Y., 297, 46 N. E. 490. Here, however, the action is in equity, and, as an ordinary incident of this action, the assessments must be paid by the referee out of the proceeds of the sale. Hence a judgment of sale in this action, itself, will convert the nominal damages into actual damages. There is no precedent cited by the respondent, nor can I find any myself, which sustains its contention as to facts similar to these at bar, while the principle declared in *Merritt* v. *Gouley,* 58 Hum., 372, 12 N. Y. Supp., 132, is quite in point in support of the appellant Stilwell."

The same desire to work out an equitable result and prevent delay and multiplicity of actions led the court in *Boice* v. *Coffeen,* 158 Iowa Reports, 707, to say:

"The rule that a warrantee against incumbrances who has not discharged the incumbrance can only recover nominal damages from his warrantor, while applicable to law actions is not controlling in equity; as a court of equity has power to award substantial damages in advance of actual payment and at the same time provide against double liability of the warrantor by a proper provision in the decree."

The case at bar is not an action in equity but an action at law and hence it is impossible for the court in this case to provide against the remote possibility of the defendant being held personally liable by the city for the payment of one or more of the unpaid street assessments upon failure of the then owner of the land to pay the same. However, it by no means follows that equity is without power in a separate equitable action to relieve the defendant from such remote but possible contingency of double liability.

The plaintiff's grantee has expressly assumed the payment of the unpaid street assessment. Hence, the defendant can never be held liable upon her covenant against incumbrances by any one except the plaintiff. Moreover, if the plaintiff's grantee or subsequent grantees should fail to pay the street assessments when the same become due under the installment plan and the city should elect to hold the defendant personally, such payment by the defendant of such street assessment would clearly be for the benefit of the then owner of the land. *In effect, the defendant would thereby discharge the land from the lien of the street assessments and would be entitled by an equitable action to be subrogated to such lien as against the then owner.*

The general rule is well stated in 25 Ruling Case Law, Article 48, page 1366, as follows:

"It is generally considered that there is nothing in the nature of a lien for taxes or assessments or in the fact that such a lien exists in favor of a sovereign taxing power to prevent the application of the equitable doctrine of subrogation, in a case where subrogation would otherwise be proper."

The doctrine of subrogation as now applied is broad enough to include every instance in which one person, not acting voluntarily, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. 25 Ruling Case Law, Article 10, page 1323.

A case directly in point is *Title Guarantee & Trust Company v. Haven, et al,* 196 New York Reports, page 487. In that case, the defendants acquired land subject to a lien for street assessments and agreed to sell the same free and clear of all incumbrances. The assessments were paid not by the defendants but by the plaintiff, by reason of forged check. Plaintiff brought suit asking to be subrogated to the lien of the street assessments upon the lands or, after the land had been sold, that the lien attach to the moneys received by the defendants as the purchase price and that the plaintiff recover the amount of the street assessments from the defendants.

The Court of Appeals of New York held that although in that

case the payment by the plaintiff was purely gratuitous, he was entitled to be subrogated to the city's lien.

Judge Bartlett said at page 494:

"The money was not recoverable in an action at law because no one can thus make himself the creditor of another by the unsolicited payment of his debts, but, payment, however, operated as between the defendants and the city to discharge the city's lien which rested upon the defendant's land; and the theory upon which the plaintiff has brought the present suit in equity is that this lien under the circumstances is to be deemed still alive for the benefit of the party who actually paid the assessments and inasmuch as the defendants have conveyed away the land the lien is transferred to the proceeds in their hands."

Answering a doubt which was expressed as to whether the plaintiff could be substituted for the city so as to preserve the lien, the court said:

The doubt thus suggested finds little support in the cases which we have been able to find bearing on the question. On the contrary, the cases are not infrequent in which such liens, although discharged as to the taxing power, have been kept alive to do justice between third parties. In *Corkrum* v. *West* (122 Ind. 372) the property of the appellee had been applied to the payment of a tax which the land held by the appellant was justly and primarily bound to pay. Under these circumstances the Supreme Court of Indiana held that the appellee was entitled to be subrogated to the state's lien for taxes upon the land conveyed to the appellant. In *Sharp* v. *Thompson* (100 Ill. 447) where the mortgagee had paid taxes which it was the duty of the mortgagors to pay, it was held that the mortgagee was thereby subrogated to the rights of the state which had a lien upon the land for taxes."

The court went so far as to transfer the lien from the land to the money derived from its sale, saying at page 496:

"If the defendants still retained the land upon which the assessments were paid, the plaintiff succeeding to the rights of the city would have acquired its lien thereon for the amount of the assessments. Although the lien of the city of New York was terminated as to the city by the payment of the assessments

it could be regarded as still existent for the purpose of doing justice between the party who had paid them and the owners of the land. The land having been converted into money in the pockets of the defendants the lien attaches to that money and is enforceable against it.''

A similar Ohio holding is found in *Lawton* v. *Adams,* 15 Ohio Circuit Court Reports, page 233; in which the syllabus reads:

''Where the mortgagee pays the taxes on the mortgaged land, he is entitled to be reimbursed for such payment out of the land, and for that purpose is subrogated to the rights of the state.''

Another direct authority is *Edy et al* v. *Leath, Admr., et al,* 26 Circuit Court Reports, Laning, page 645, in which the court permitted an individual who paid assessments to be subrogated to the lien of the city. Judge Hull said at page 649:

''The city was entitled to the assessments, she was occupying the property as a life tenant and paid them, and thereby paid debts that were due from the plaintiffs in error, thus relieving the property which they owned in fee simple, subject to her life estate, from these liens, and as a result benefited the owners of the fee simple to the amount of the assessment—something over a thousand dollars. * * * It seems to us entirely equitable and just that these assessments that were paid by her, and which ought to have been paid by the plaintiff's in error, the payment of which protected their estate as well as hers, should be repaid to her, or her estate, and should be held to be a lien upon the property.''

Analogous rulings are contained in *Date* v. *Imhof et al,* 22 Ohio Circuit Court Reports (N. S.), 475; *Joyce* v. *Dauntz,* 55 Ohio State Reports, 538; and *Warner, Admr.* v. *York et al,* 1 Circuit Court Reports (N. S.), page 73, affirmed without opinion in 75 Ohio State, 595.

In 17 American & English Annotated Cases, 1134, in which many of the cases upon this subject are collected; it is said:

''By the weight of authority, however, it has been held that by subrogation, the lien for taxes may be enforced by a person discharging them by compulsion or agreement,'' citing numerous cases.

Also see American Annotated Cases, 1912-B, at page 751, on the subject: Note: "Right of Person Paying Tax to Be Subrogated to Tax Lien."

The authorities above referred to are sufficient to show that equity affords the defendant complete relief against the possibility her counsel suggests of a double liability and demonstrates that should she be required to discharge and pay the city the street assessment which is now a lien upon the land she would then be entitled to be subrogated to the city's lien.

It will thus be seen that the remote contingency of double liability is more fanciful than real and can be amply safeguarded and prevented by the proper equitable remedy.

To sustain the contention of the defendant and grant the plaintiff a judgment for the amount of the single installment of said street assessment which has been paid, would lead to a multiplicity of actions which the law seeks to avoid. Following this contention to its logical conclusion, the plaintiff would be entitled to maintain a separate action against the defendant upon the payment of such installment of the street assessment. This would require the plaintiff to commence ten separate actions at law, assuming that the owner of the land pays each installment as the same becomes due. It would be vastly more expensive and harrassing a procedure to the defendant to be haled into court and required to pay the costs in ten separate actions at law than to be compelled to discharge her entire obligation to the plaintiff in this single action, with the remote possibility of having to maintain an equitable action of subrogation if the present owner of the land does not pay the assessment according to his covenant and she is held upon her personal liability to the city under the statute.

Nor can the court agree that plaintiff in the present action has taken no steps to discharge or remove the incumbrances. She has secured a purchaser for the land who, specifically covenants to discharge and remove the lien of the street assessments as the same become due and has given him the money to discharge the street assessment by deducting the same from the amount she

would otherwise receive as the purchase price of the property.
A similar holding was made in *Greiszler* v. *DeGraff, et al,* 166
New York Reports, page 339.   In that case the plaintiff was
the remote grantee of lands which the defendants' testator con-
veyed to one, Knabel with a covenant against incumbrances. At
the time of the conveyance, the lands were incumbered by a local
assessment. Knabel conveyed the lands to Brierly subject to the
assessment. Brierly conveyed to the plaintiff with a covenant
against incumbrances.   The plaintiff was obliged to and did pay
the assessment and sought to recover that sum from the personal
representatives of the original grantor.   The court after holding
that the covenant against incumbrances ran with the land so as
to be available to remote grantees said that notwithstanding, it
was a fatal obstacle to the plaintiff's right to recover because the
plaintiff's immediate grantor purchased expressly subject to the
incumbrances.   The court said at the bottom of page 344:

"The effect of his purchase, subject to the assessment, was to
relieve the prior grantors from any liability to him on the cove-
nant.   Presumptively he was allowed in the purchase to deduct
the amount of the assessment from the purchase price and he
was, therefore, furnished by his grantor with the money to pay
the assessment, and when he took the land and was furnished
with the money to pay the incumbrance the obligation of the
covenant was discharged and extinguished.   He could not call
upon any prior covenantor to pay the assessment, when they
had furnished him with the funds to pay it himself.   (*Vrooman*
v. *Turner,* 69 N. Y., 289)"

The practical effect of the conveyance by the plaintiff to the
defendant of land warranted to be free from incumbrances, but
in fact subject to a street assessment, was to diminish the value
of the land by the amount of the street assessment.   While the
plaintiff's damage may have been nominal until she actually
paid the assessment, her damages became actual when she sold
the land and was compelled to or did deduct the amount of the
street assessment from the selling price.   She was thereby dam-
aged by the entire amount of the assessment which she had
taken steps to pay as the same become due by providing her

grantee with the funds with which to pay the same. In the ordinary course of events, these assessments will be paid by the plaintiff's grantee as the same become due or if not, the city will collect the same against the then owner by virtue of its lien upon the land.

In the remote event of the plaintiff being required to discharge the land from the lien of any such installments, by virtue of her personal liability under the statute, such payments would clearly be for the benefit of the then owner and the plaintiff would have an adequate remedy by an appropriate equitable action.

For these reasons the court finds in favor of the plaintiff for the full amount of the street assessment with which the land was incumbered at the time of the conveyance.

Nothing contained herein shall be considered as affecting the cross petition, hearing of which was by agreement postponed until the decison upon the answer and petition.

[*Note*—After the above opinion was written the cross-petition was heard and granted in part and overruled in part.]